On Motion for Reconsideration.
Lanzinger, J.
{¶ 1} This matter is before us on a motion for reconsideration filed by appellant, Acordia of Ohio, L.L.C. (“the L.L.C.”) and supported by amici curiae, Ohio Chamber of Commerce, Ohio Chemistry Technology Council, USI Holdings Corporation, USI Midwest, Inc., Hylant Group, Inc., Cintas Corporation, and professors Sean K. Mangan and John A. Barrett Jr. A memorandum in opposition was filed by appellees Michael Fishel, Janice Freytag, Mark Taber, Sheila Diefenbach (collectively, “the employees”), Neace Lukens Insurance Agency, L.L.C., Neace & Associates Insurance Agency of Ohio, Inc., and Joseph T. Lukens. We granted the motion for reconsideration. Acordia of Ohio, L.L.C. v. Fishel, 132 Ohio St.3d 1485, 2012-Ohio-3334, 971 N.E.2d 962.
{¶ 2} In Acordia of Ohio, L.L.C. v. Fishel, 133 Ohio St.3d 345, 2012-Ohio-2297, 978 N.E.2d 814 (“Acordia I ”), this court affirmed the judgment of the court of appeals. The lead opinion concluded that while the employees’ noncompete agreements transferred by operation of law following merger with the L.L.C., the language found in those agreements precluded the L.L.C. from enforcing them as if it had stepped into the shoes of the original contracting employer. Id. at ¶ 14, 19.
{¶ 3} After reviewing the memoranda presented to the court on reconsideration, we have determined that portions of the lead opinion in Acordia I should be clarified. We reassert that in accordance with R.C. 1701.82(A)(3), all assets and property, including employment contracts and agreements, and every interest in *357 the assets and property of each constituent entity transfer through operation of law to the resulting company postmerger. We clarify the lead opinion by noting that certain language was, upon further consideration, erroneous. As a result, we now reverse the judgment of the court of appeals and remand the cause to the trial court so that it may determine whether the noncompete agreements are enforceable against the employees.
I. Our Decision Is Limited to the Context of Noncompete Agreements
{¶ 4} At the outset, we wish to emphasize that both the lead opinion in Acordia I and our decision today are limited in scope. In its motion for reconsideration, the L.L.C. worries that Acordia I may affect not only noncompetition agreements, but all other contracts transferred as a result of a merger. This is not the case. The proposition of law we accepted for review in this case stated:
Pursuant to Ohio’s merger statutes, agreements between employees and employers that contain restrictive covenants are assets of the constituent company that transfer automatically by operation of law in a statutory merger from the constituent company to the surviving company and are enforceable by the surviving company according to the agreements’ original terms as if the surviving company were a party to the original agreements.
Acordia of Ohio, L.L.C. v. Fishel, 128 Ohio St.3d 1458, 2011-Ohio-1829, 945 N.E.2d 522. Our review of this case was thus limited to the narrow legal issues of whether noncompete agreements transferred by operation of law to the surviving company and whether the surviving company could enforce the agreements as if it had stepped into the shoes of the original contracting company. Both the lead opinion in Acordia I and our decision today are based upon considerations unique to noncompete agreements in the context of a merger and apply only to this narrow vein of cases. Nothing in either opinion should be construed as addressing the effect of a merger on any other company contracts.
II. The Noncompete Agreements Transfer by Operation of Law
{¶ 5} The lead opinion in Acordia I clearly stated that noncompete agreements transfer automatically to the surviving company by operation of law. The lead opinion specifically provided, “We emphasize that in accordance with R.C. 1701.82(A)(3), the surviving company possesses all assets and property and every interest in the assets and property of each constituent entity, including employment contracts and agreements.” Acordia I, 133 Ohio St.3d 345, 2012-Ohio-2297, 978 N.E.2d 814, at ¶ 14. We reemphasize this principle today. Ohio merger law remains undisturbed, and employee noncompete agreements transfer to the *358 surviving company after a merger has been completed pursuant to R.C. 1701.82(A)(3).
III. Portions of the Lead Opinion in Acordia I Were Erroneous
{¶ 6} After reviewing the parties’ memoranda and giving further consideration to this case, we conclude that portions of the lead opinion in Acordia I require correction. Specifically, a portion of analysis found in Acordia I’s lead opinion was based upon a misreading of language from a previous case that “a merger involves the absorption of one company by another, the latter retaining its own name and identity, and acquiring the assets, liabilities, franchises and powers of the former. Of necessity, the absorbed company ceases to exist as a separate business entity.” Morris v. Invest. Life Ins. Co., 27 Ohio St.2d 26, 31, 272 N.E.2d 105 (1971). Based on this language, the lead opinion in Acordia I concluded that the companies with which the employees had signed noncompete agreements ceased to exist following the merger. Acordia I at ¶ 12. The lead opinion further reasoned that because the noncompete agreements do not state that they can be assigned or will carry over to the contracting company’s successors, the agreements’ specific language indicated that the contracting parties intended that the noncompete agreements would operate only between themselves — i.e., the employee and the specific employer. Id.
{¶ 7} Upon further consideration, we now recognize that the lead opinion’s reading of Morris was incomplete. While Morris does state that the absorbed company ceases to exist as a separate business entity, the opinion does not state that the absorbed company is completely erased from existence. Instead, the absorbed company becomes a part of the resulting company following merger. The merged company has the ability to enforce noncompete agreements as if the resulting company had stepped into the shoes of the absorbed company. It follows that omission of any “successors or assigns” language in the employees’ noncompete agreements in this case does not prevent the L.L.C. from enforcing the noncompete agreements.
{¶ 8} Based on the foregoing clarification, we note that any language in the lead opinion in Acordia I stating that the L.L.C. was unable to enforce the employees’ noncompete agreements as if it had stepped into the original contracting company’s shoes or that the agreements were required to contain “successors and assigns” language for the L.L.C. to have the power to enforce the agreements was erroneous.
IV. The Reasonableness of the Noncompete Agreements
{¶ 9} While we now hold that the L.L.C. may enforce the noncompete agreements as if it had stepped into each original contracting company’s shoes, we agree with Justice Cupp’s assertion in his dissent in Acordia I that even *359 though the agreements transfer to the L.L.C. by operation of law, the transfer does not “foreclose appropriate relief to the parties to the noncompete agreement under traditional principles of law that regulate and govern noncompete agreements.” Acordia I, 133 Ohio St.3d 345, 2012-Ohio-2297, 978 N.E.2d 814, at ¶ 36 (Cupp, J., dissenting). In other words, the employees still may challenge the continued validity of the noncompete agreements based on whether the agreements are reasonable and whether the numerous mergers in this case created additional obligations or duties so that the agreements should not be enforced on their original terms. Id. at ¶ 39 (Cupp, J. dissenting).
{¶ 10} We have held that “[a] covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect an employer’s legitimate interests.” Raimonde v. Van Vlerah, 42 Ohio St.2d 21, 325 N.E.2d 544 (1975), paragraph one of the syllabus. Furthermore, “[a] covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public.” Id., paragraph two of the syllabus. In determining the reasonableness of a noncompete agreement, we have stated that courts must determine whether the restraints and resultant hardships on the employee exceed what is reasonable to protect the employer’s legitimate business interests. Rogers v. Runfola & Assoc., Inc., 57 Ohio St.3d 5, 8, 565 N.E.2d 540 (1991).
{¶ 11} Therefore, while we hold today that the L.L.C. has the right to enforce the employees’ noncompete agreements as if it had stepped into the shoes of the original contracting companies, we recognize that whether the noncompete agreements are reasonable remains an open question. Because the lower courts have not ruled on the reasonableness of the noncompete agreements, we will not address that issue in this decision, and we now remand the case to the trial court so that it may consider the issue.
Y. Conclusion
{¶ 12} Recognizing that both the lead opinion in Acordia I and our opinion today apply only in the limited context of employee noncompete agreements, we reassert that employee noncompete agreements transfer by operation of law to the surviving company after merger. The language in Acordia I stating that the L.L.C. could not enforce the employees’ noncompete agreements as if it had stepped into the original contracting company’s shoes or that the agreements must contain “successors and assigns” language in order for the L.L.C. to enforce the agreements was erroneous. We hold that the L.L.C. may enforce the noncompete agreements as if it had stepped into the shoes of the original contracting companies, provided that the noncompete agreements are reasonable *360 under the circumstances of this case. We accordingly reverse the judgment of the court of appeals and remand this cause to the trial court so that it may determine the reasonableness of the noncompete agreements.
Judgment reversed and cause remanded.
O’Connor, C.J., and Lundberg Stratton, O’Donnell, Cupp, and McGee Brown, JJ., concur.
Pfeifer, J., dissents.